# Richmond

## Virginia Electric and Power Company, Inc. v. Adam R. Lowry.

March 12, 1936.

Present, All the Justices.

The opinion states the case.

*T. Justin Moore* and *Archibald G. Robertson,* for the plaintiff in error.

*Thomas A. Williams, L. C. O'Connor* and *L. S. Bremner,* for the defendant in error.

Hudgins, J., delivered the opinion of the court.

This is an action to recover damages for personal injuries suffered while plaintiff (defendant in error) was a passenger on a street car operated by defendant. The jury returned a verdict for plaintiff in the sum of $1,000. From the judgment entered on the verdict, this writ of error was allowed.

The action of the court in overruling a motion to set aside the verdict is the only error assigned. Plaintiff alleged and proved that a few minutes before noon on July 11, 1932, at Cowardin avenue, in South Richmond, he was accepted by defendant company as a passenger on an electric railway safety car. After traveling south on the street car, along the Richmond-Petersburg turnpike, approximately a mile, and just after the car had passed over Halifax avenue, which intersects the turnpike at approximately right angles, the car suddenly jumped the track and stopped at an angle of nearly forty-five degrees to the track. As a result of this derailment, plaintiff was thrown forward between two seats, and was painfully, and possibly permanently injured.

The defendant then introduced evidence which clearly established that the derailment of the car was caused by the breaking of the front axle inside the hub, on the left front wheel. This, in turn, resulted from a progressive fracture in the axle. The diameter of the axle was about four inches, but at the time of the break, it was held together by a slender thread of metal about one inch in diameter, which suddenly gave way. It was proven that a progressive fracture, as the term implies, is a crack in the metal which starts either from the interior, due to some defect in manufacture, or from the outside, possibly from a scratch or bruise. The crack is very slight to begin with,

and progresses at a more or less unknown rate to a point where the remaining metal is not sufficient to carry the load imposed on it.

Defendant conclusively established that it was guilty of no negligence in the purchase of the axle, nor in the building and maintenance of the tracks and road bed. It then introduced the following evidence: that it maintains a modern well-equipped shop, where experienced mechanics inspect and overhaul its cars and machinery; that each night the cars in use the previous day are placed over a pit, and without cleansing or removing any part of the equipment, the car is given a practical inspection. When the car has been in service for approximately ten days, and has completed 1,000 miles of operation, it is given a thorough general inspection, in so far as such inspections can be made without dismantling and rebuilding. After a car has completed 75,000 miles of operation, it is carried to the shop, dismantled, overhauled and rebuilt, except that the gear and wheels are not removed from the axle unless replacement of repairs are found necessary. When the wheels are removed from the axle, the axle is cleaned and "bathed" in oil, and a coat of whiting applied; it is then suspended in a sling and struck with a hammer, in order to set up vibrations. If any cracks have developed the oil or grease will ooze from the crack and discolor the whiting. If none are revealed, other tests are applied to determine whether the axle is fit for further service.

The life of an axle is about 500,000 miles of operation. This particular axle had been in use for some 191,000 miles, and it had completed some 42,000 miles of operation since the wheels had been removed and the whiting test applied, and at the intervals mentioned it had been subjected to the other tests enumerated.

Two engineers employed by defendant, and three employed by other companies, testified that this method of inspection was the standard method adopted and used by

the street railway industry operating in other sections, and that no better practical method of inspection had been found. The fracture in this axle was just inside the hub, and could not have been detected without removing the wheel. It requires the pressure of about sixty tons to put a wheel in place on an axle, and from sixty to one hundred and fifty tons of pressure to remove it. Because this pressure, and the tool work required to remove and replace the wheels, subject the axle to hazards which tend to weaken it, a more frequent inspection of the axle, within the hub of the wheel, has been found impracticable.

On this evidence the jury returned a verdict for plaintiff, which was approved by the trial court.

In this court neither party raised any objection to the instructions, yet there are sharply divergent views on the principles of law applicable. Plaintiff contends that when he had proved that while a passenger, and exercising due care for his own safety, he had been injured by the derailment of a car in which he was riding, he thereby cast on the carrier the burden of proof to establish that it had been guilty of no negligence whatever, and that the damage had been occasioned by an inevitable casualty, or by some cause which human care and foresight could not prevent. In support of this contention he cites *Baltimore & O. Ry. Co.* v. *Wightman's Adm'r,* 29 Gratt. (70 Va.) 431, 26 Am. Rep. 384; *Richmond Ry., etc.* v. *Hudgins,* 100 Va. 409, 41 S. E. 736; *Norfolk Ry. & L. Co.* v. *Spratley,* 103 Va. 379, 49 S. E. 502; *Washington-Virginia Ry. Co.* v. *Bouknight,* 113 Va. 696, 75 S. E. 1032, Ann. Cas. 1913E, 546. It is quite true that these cases support this contention. But in *Norfolk So. Ry. Co.* v. *Tomlinson,* 116 Va. 153, 161, 81 S. E. 89, 92, Judge Buchanan speaking for a unanimous court said: "In the *Tanner Case, supra* (100 Va. 379, 41 S. E. 721), instruction No. 3, given for the defendant and approved by this court as a correct statement of law was as follows: 'The court instructs the jury that in consider-

ing the question of negligence in this case, if they believe from the evidence in the case that the plaintiff was a passenger on the defendant's train and received injuries complained of in the wreck of said train, then at the *beginning of the trial and before any evidence was introduced* upon the subject of negligence there was a presumption of law in favor of the plaintiff that the accident was caused by the negligence of the defendant, but there has been evidence introduced on both sides in the trial of this case, and if the jury believe from the whole evidence that it exercised the highest degree of care that prudence and foresight would show to it was necessary in the selection, repair and use of its machinery and cars, and in the construction and repair of the track where the derailment of said train occurred, and in the running and management of said train at the time of the accident the jury shall find for the defendant.'

"That instruction left it to the jury to determine whether or not, upon the whole evidence the passenger carrier had exercised that high degree of care required of it, as pointed out in the instruction, so as to rebut the presumption of negligence arising from proof of the derailment itself.

"In many cases, as in this, the maxim, *res ipsa loquitur,* applies. The affair speaks for itself. But whether the evidence relied on by the plaintiff to make out a cause of action is the accident itself, from which arises a presumption of negligence, or is direct evidence of negligence, the burden of proof as to the defendant's negligence remains upon the plaintiff throughout the trial.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"In order to rebut the presumption of negligence arising from the derailment, the defendant, we do not think was bound to satisfactorily account for the cause of the accident. Sometimes accidents occur which are inexplicable, and to hold that a carrier of passengers must under all circumstances show what caused the accident in order to rebut the presumption of negligence arising from the

accident itself would in such cases impose an impossibility upon the carrier, and render it practically an insurer of the safety of the passenger injured.

\* \* \* \* \* \* \* \* \* \*

"It is true that an instruction substantially like the instruction in question was given in the case of *Washington, etc., Ry. Co.* v. *Bouknight, supra,* and upon a writ of error was approved by this court; but upon further consideration of the question we are of opinion that the instruction is not a correct statement of the law, is in conflict with the general principles announced in that case as to the burden of proof and the submission of the question of negligence to the jury upon the whole evidence in the case, and is contrary to the principles embodied in the instructions given and approved in the *Tanner Case, supra,* and the great weight of authority on the subject."

This case marks a decided departure from former decisions in at least two particulars: (1) That the rule of *res ipsa loquitur,* when applied to passengers injured in derailment cases, does not shift the burden of proof to defendant, but remains on the plaintiff throughout the case; (2) that in such a case the defendant is not required to account for the cause of the accident.

Notwithstanding the fact that the court receded from its former decision in the two particulars named, in the course of the opinion it approved the action of the trial court in refusing an instruction reading as follows: "that they cannot, under their oaths, find for the plaintiff, unless they believe from the evidence that the defendant has been shown to have been guilty of negligence which caused the accident."

The reasons given for this refusal are stated thus (116 Va. 153, page 159, 81 S. E. 89, 91): "From the language of this instruction the jury might very well have thought that some specific act of negligence on the part of the defendant must be shown before the plaintiff could recover, when in fact, in the absence of any proof except the mere fact of the derailment and injury, the jury, if

they saw fit, might have found for the plaintiff. The instruction was ambiguous and misleading, and the court properly refused to give it."

Neither plaintiff nor defendant showed how or why the train became derailed. Under these circumstances the court held that the plaintiff was entitled to go to the jury on his *prima facie* case, established by the fact of derailment, and the resulting injury to the passenger.

The same question was again presented to this court in *Hines, Director General* v. *Beard,* 130 Va. 286, 289, 290, 293, 295, 107 S. E. 717. The facts stated in the opinion were that Beard, while seated in one of the Chesapeake & Ohio passenger coaches, was injured in a wreck caused by a derailment of the train. After establishing these facts he made no attempt to prove any specific act of negligence, though some were charged in his declaration. The defendant proved that it "made a thorough examination of the track at and about the place of the derailment and of the wheels and other parts of the running gear in all parts of the train which could have contributed to the derailment, and, after examination and consideration, 'were not able to decide on any cause for the derailment.' There was a milk car in the train, next to the engine, and it was the first to leave the track. The milk cars were steel cars, shorter than freight cars, but built for use and commonly used in passenger trains. The division master mechanic testified that he made 'a very careful examination of that car, personally gauged and trammed the wheels, personally examined the trucks and all parts of the running gear under those cars the evening after the derailment, and every part was intact, and there wasn't a possible defect that could have contributed to the derailment in any way.' This statement was not in any way contradicted. One of the witnesses for the plaintiff also testified that the track was 'in perfect order.' "

A judgment in favor of the plaintiff was reversed on the ground that the trial court gave instruction No. 2 reading thus: "The court instructs the jury that the burden

of proof is upon the plaintiff, but he is not required to point out any specific act of negligence, and if you shall believe from the evidence that the plaintiff was injured while a passenger on defendant's train on the 19th day of September, 1919, by the derailment of the car in which he was a passenger, the presumption of the law is that the accident was caused by the negligence of the defendant; and while this presumption may be rebutted by evidence tending to show that the defendant before the accident exercised the highest degree of care known to human prudence and forethought to prevent the accident, and exercised such care to maintain its roadbed, ties and rails in proper repair, and by the inspection of its cars by competent persons, to see that they were in good order, and that it was handling its train at the time of the accident in a careful and prudent manner, unless you believe from the evidence that the defendant has done all of these things, you will find for the plaintiff."

The principles stated in this instruction had been, in express terms, rejected in the *Tomlinson Case, supra.* The question was again reviewed and a number of additional authorities were cited to support the views previously stated in that case. After quoting with approval excerpts from *Sweeney* v. *Erving,* 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905; *Kay* v. *Metropolitan St. R. Co.,* 163 N. Y. 447, 57 N. E. 751, Judge Burks summarized his views, and the views of the court thus: "If a declaration should allege that the defendant was a carrier of passengers and that the plaintiff was a passenger for hire on one of its trains, that the train was derailed for some cause unknown to the plaintiff, and in consequence thereof the plaintiff sustained the injury sued for, we should hold the declaration good on demurrer. It is immaterial whether you say the negligence of the defendant is a presumption of law, or of fact. We will not split hairs on the subject. It necessarily follows that, if these facts be established, and no more appears, the plaintiff is entitled to a verdict. But the jury may not believe

that these facts have been established, and furthermore, it will seldom happen that there will be no further evidence in the cause. If there is other evidence in the cause, it is to be considered along with the inference of negligence arising from the derailment, and it is for the jury to say whether or not from all the evidence in the cause the negligence of the defendant has been established by a preponderance of the evidence.

"The plaintiff having based his right of recovery on the negligence of the defendant must show it by a preponderance of the evidence, and at no stage of the case can he escape this responsibility when he has proved to the satisfaction of the jury that he was a passenger, the derailment and his resulting injury, the doctrine of *res ipsa loquitur* dispenses with further proof on his part, until it is made to appear in some way, either by his own evidence or that introduced on behalf of the defendant that it is at least probable that the derailment was not the result of the defendant's negligence. Unless the evidence as a whole preponderates in favor of the plaintiff on the question of the defendant's negligence, the plaintiff cannot recover. A mere equipoise will not entitle the plaintiff to a verdict. If it is just as probable that the derailment is due to some other cause as to the negligence of the defendant, there can be no recovery by the plaintiff. This, we think, is the proper application of the maxim *res ipsa loquitur* to derailment cases, and the one sustained by the best considered cases."

Final judgment was not entered in this court, but the case was remanded for a new trial; thereby clearly indicating that the jury had a right, under the facts presented in that case, to find a verdict for plaintiff, based on inference or presumption from the fact that the passenger, without fault on his part, was injured in a wreck caused by the derailment of a train. Indeed, in the course of the opinion, Judge Burks said: "In derailment cases a passenger is not expected to know nor required to prove the particulars of the negligence of the defendant result-

ing in the derailment, but as derailments as a rule do not occur unless there is negligence on the part of the defendant, who has the immediate control of and is solely responsible for all of the instrumentalities of the carriage, there comes to the aid of the passenger, upon proof of the derailment and consequent injury, an inference, deduction or conclusion, sometimes called a presumption of fact or simply a presumption of negligence on the part of the defendant, entitling the plaintiff to a verdict if there is no other evidence in the case, or which is to be weighed and considered by the jury with other evidence in the case, if there is such, in determining whether or not the defendant has been negligent.

"     *     *     *     *     *     *     *     *     *

"If upon all the evidence before the jury they did not believe that the plaintiff had shown by a preponderance of the evidence that the derailment was the result of the defendant's negligence the defendant was entitled to a verdict in his favor, and the jury should have been so told."

Again as in the *Tomlinson Case, supra,* defendant offered evidence tending to prove that it had exercised the highest degree of practical care in maintaining its roadbed and the operation of its trains, but neither side offered any evidence tending to prove the specific cause of the derailment, and it was held that the case presented a question for the jury.

We have discussed these two cases at length for two reasons: (1) Because they overrule previous decisions of this court on the question of the burden of proof in the sense of the risk of non-persuasion, and (2) Because there are some expressions found in the opinions in *C. & O. Ry. Co.* v. *Baker,* 149 Va. 549, 140 S. E. 648, 141 S. E. 753; Id., 150 Va. 647, 143 S. E. 299, which are not altogether in harmony with the views herein expressed. *Riggsby* v. *Tritton,* 143 Va. 903, 129 S. E. 493, 45 A. L. R. 280.

The rule of *res ipsa loquitur,* as modified in the *Tomlinson* and *Beard Cases, supra,* and followed in the

*Baker Case* and *Chesapeake & O. Ry. Co.* v. *Tanner,* 165 Va. 406, 182 S. E. 239, does not have the effect of shifting the burden of proof, and does not convert defendant's general issue into an affirmative defense, but when the evidence is all in, the question of preponderance of evidence is for the jury. See *McCloskey* v. *Koplar,* 329 Mo. 527, 46 S. W. (2d) 557, 92 A. L. R. 641, and authorities cited in note thereto. It follows that, in a proper case, the jury may be instructed that it is not incumbent on defendant to account for the means or cause of the happening of the event resulting in injury to plaintiff; or, after due consideration of all the evidence, if they believed that it was just as probable that the injury resulted from a cause for which defendant was not responsible as a cause for which it was responsible, they should find for defendant.

■ After all evidence for both sides is in, and a motion is made to take the decision from the jury, either by a motion for a directed verdict, or a non-suit, or, according to the practice in Virginia, to strike the evidence, it is not the duty, or within the province of the court, to determine whether the evidence is equally balanced, or whether the preponderance of the evidence is on one side or the other. But it is the duty of the court to determine whether or not there exists any reasonable hypothesis on which the jury could base a finding of defendant's negligence. If such a hypothesis exists, then the motion should be overruled. That is, where the evidence is such that reasonable men may fairly differ as to whether it is sufficient to convict the defendant of negligence, it then becomes the duty of the court to submit the case to the jury, under proper instructions.

■ Applying these principles to the evidence presented in the case under consideration, we have a passenger guilty of no contributory negligence injured by the derailment of the car in which he was riding; an accident which does not usually happen when the carrier exercises that high degree of care which the law requires for his safety. These facts make out a *prima facie* case.

To meet the case thus made defendant produced proof, pointing out that the derailment was due to a specific thing, namely, a broken axle, which in turn was the result of a defect of unknown origin and of indeterminate duration; that in the purchase of this particular piece of machinery, it had exercised that high degree of care which the law requires; that the method of inspection was that which had been demonstrated to be practicable by its adoption and use on the part of a recognized class of persons engaged in similar affairs, and such inspection did not, and could not have revealed the defect.

There is no doubt about the cause of the derailment; there is no uncertainty as to the manner in which defendant has performed its obligation for the care and safety of its passengers. The evidence fully establishes the fact that the standard of care it exercised, fully complied with the test stated in both the majority and minority opinions in *Richmond-Ashland Railway Co.* v. *Jackson,* 157 Va. 628, 162 S. E. 18. On consideration of all the evidence we find no reasonable hypothesis on which to sustain a verdict based on negligence of defendant.

Prior to the decision in the *Tomlinson Case,. supra,* and while the rule in Virginia placed the burden on the carrier to disprove negligence in this class of cases, a similar question was before the court in *Roanoke Ry. & Elec. Co.* v. *Sterrett,* 108 Va. 533, 62 S. E. 385, 387, 19 L. R. A. (N. S.) 316, 128 Am. St. Rep. 971. Sterrett, a passenger on a street railway car, was injured when the bridge, over which the car was passing, collapsed. The collapse of the bridge was due to an imperfect weld in the stringer upholding it, and this defect could not have been detected by the most careful scrutiny. The court quoted Hutchinson on Carriers, vol. 2 (3d Ed.), sections 903, 904, as follows: "Where an accident arises from a hidden and internal defect, which a careful and thorough examination would not disclose, and which could not be guarded against by the exercise of a sound judgment and the most vigilant oversight, then the proprietor is not liable for the injury,

but the misfortune must be borne by the sufferer as one of that class of injuries for which the law can afford no redress in the form of a pecuniary compensation."

It is true plaintiff contends that the breaking of the axle was the *result* of the derailment, and not the *cause*. One or more witnesses did testify that the car, at the time of the derailment, was running at a speed of thirty to thirty-five miles per hour, but even if it was, such a rate of speed over the rails on the Richmond-Petersburg line, ordinarily, would not be excessive or dangerous. This roadbed is situated in the middle of the turnpike, the space between the tracks is not paved, except at street intersections, and is devoted exclusively to street car traffic. The time of the accident, as heretofore stated, was about mid-day. The street is straight, with a slight downgrade. There is nothing in the evidence to suggest that the speed of the train was a contributing cause of the derailment.

Plaintiff testified that he heard a loud bumping noise under the car as it passed over several intersections before reaching Halifax avenue. This indicated, to him, that a part of the running gear, or machinery, was hanging down, and striking the hard surface of the street at intersections, but he failed to prove that the noise was heard, or should have been heard, by any employee of defendant. There were several other passengers on the car, and two motormen, who testified that they heard no unusual noise or bumping sound prior to the derailment. After the wreck a thorough examination was made of all parts of the machinery and equipment, and all except the axle was found in good order, and in proper place. The evidence is full-handed that the sole cause of the derailment was the breaking of the axle, and no other rational conclusion can be reached from the evidence.

Plaintiff further contends that decision in the case is controlled by *Norfolk Coca-Cola Bottling Works, Inc.* v. *Krausse*, 162 Va. 107, 173 S. E. 497, in which recovery was allowed for injury sustained by swallowing bits of

glass while drinking Coca-Cola from a bottle. It was held that the finding of the glass in the bottle was itself evidence that due care had not been exercised; and that if defendant had done everything it said it did, it would have been impossible for glass to have gotten in the bottle. Exactly how the glass came to be in the sealed bottle was not explained. It was clearly established that the bottle had been continuously in the possession of defendant, or its dealer, from the time it was filled with Coca-Cola, until plaintiff opened it in the presence of an employee of the dealer. In the case under consideration, the cause of the derailment was clearly established. It is a matter of common knowledge that occasionally there is a defect in metal or in machinery which causes it to break regardless of the care used to manufacture, select and maintain such machinery.

For the reasons stated, the judgment of the trial court is reversed, the verdict of the jury set aside, and a final judgment here entered for defendant.

*Reversed and final judgment.*

GREGORY, J., dissenting.

The opinion of the majority, for all practical purposes, abolishes the doctrine of *res ipsa loquitur* in Virginia in cases where a passenger brings his action for damages against a common carrier. It takes the question of liability away from the jury, and leaves the decision thereof entirely to the court. My view is that in these cases the doctrine applies, and from the plaintiff's standpoint it alone is sufficient to make an issue for the jury, and that it should be submitted to the jury along with the other proper issues in the case. For these reasons I cannot concur with the majority.