# Staunton

## Joyce Hall Easterling v. Dr. W. W. Walton.

September 8, 1967.

Record No. 6460.

Present, All the Justices.

Robert T. Winston; William J. Sturgill (Edwin G. Shaffer; Kime and Jolly; Greear, Bowen, Mullins, Winston and Sturgill, on brief), for plaintiff in error.

John B. Spiers, Jr. (Spiers, Spiers & Mink, on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

This action was instituted by Joyce Hall Easterling, plaintiff, against Dr. W. W. Walton, defendant, to recover damages for injuries sustained through the alleged negligence of the defendant in failing to remove a laparotomy pad (lap pad) inserted in her abdomen during the course of surgery performed upon her and his failure to render proper post-operative care.

At the conclusion of plaintiff's evidence the trial court struck out her evidence on the issue of defendant's negligence in failing to remove the lap pad, but permitted the jury to consider the issue of whether or not the defendant was negligent in the post-operative care of plaintiff. The jury returned a verdict for the defendant, upon which the trial court entered judgment, and plaintiff is here on a writ of error.

Plaintiff presented the following evidence: A Caesarean operation was performed upon her in 1950 by Dr. E. J. Benko. She recovered from this operation and was in good health until 1961 when she was injured in an automobile accident. Later a hernia developed in the line of the incision made in her Caesarean operation, and on February 11, 1963, she was operated upon by the defendant in the Pulaski Hospital for repair of the hernia and removal of her appendix.

Shortly after the hernia operation plaintiff's abdomen became swollen and sore and she developed frequent headaches. In March the incision broke open. Plaintiff noticed a piece of white string in the incision that looked like gauze and pulled it out with a pair of tweezers. Unable to contact defendant, the plaintiff consulted another doctor who sent her to a hospital in Norton, Virginia, where an examination indicated some foreign substance in her abdomen. She remained in the Norton hospital for about fourteen days. Plaintiff's sister informed defendant of the results of the examination, and an appointment was made for plaintiff to see him. Defendant examined plaintiff, gave her some medicine, and told her she could return home and that she ought to be well within a year. X-rays were not taken.

Plaintiff's condition did not improve, and on September 3, 1964, she was examined by a Dr. Hanson. X-rays taken by Dr. Joseph Straughan, a physician and radiologist, indicated that there was a foreign substance in the middle of plaintiff's pelvis. He "thought it was a marker in a surgical sponge."

On October 4, 1964, Dr. V. L. Liszka operated upon plaintiff and found a surgical lap pad in her abdomen surrounded by an abscessed cavity. The lap pad was found in the same area of the operation performed by defendant. Dr. Liszka was of the opinion that the lap pad was left in plaintiff's abdomen during the operation performed by defendant in 1963.

The deposition of Dr. Benko, who performed the Caesarean section in 1950, was read to the jury. He examined the lap pad removed by Dr. Liszka, and expressed the opinion that it was not left in plaintiff during the Caesarean operation.

Dr. Straughan testified that it was not accepted medical practice to leave a lap pad in a patient's abdomen.

Virginia Mabrey, plaintiff's sister and a registered nurse at the Pulaski Hospital, was not in the operating room when plaintiff was operated upon by defendant. She testified, however, that it was customary at the hospital for two nurses, a scrub nurse and a circulating nurse, to keep a count of the lap pads put in and taken out of the wound during an operation; that the surgeon puts the lap pads in the wound and he or a physician assisting him in the operation takes them out at the surgeon's direction; that the surgeon is the "captain of the ship" and has complete control over the operation and the direction of all persons assisting him in the operating room; and that the surgeon surveys the wound before closing it.

Plaintiff contends that the trial court erred in holding that the *res ipsa loquitur* doctrine was not applicable, in requiring her to produce expert evidence to establish defendant's negligence, in striking out her evidence on the issue of negligence in leaving the lap pad in her body, in not granting her motion for a mistrial, and in permitting defendant's counsel to examine her on certain irrelevant and prejudicial matters.

[1] In certain cases a plaintiff may invoke the *res ipsa loquitur* doctrine to establish a breach of duty owed him by a legal inference of negligence from proved facts. The doctrine applies in negligence cases where the means or instrumentality which caused an injury is in the exclusive possession and control of the person charged with

the negligence, and such person has, or should have had, exclusive knowledge of the way this instrumentality was used, and the injury would not ordinarily have occurred if those who have the management and control had used proper care. *Danville Com. Hospital* v. *Thompson*, 186 Va. 746, 757-758, 43 S. E. 2d 882, 886-887, 173 A.L.R. 525, 531 (1947); *Riggsby* v. *Tritton*, 143 Va. 903, 907-908, 129 S. E. 493, 495, 45 A.L.R. 280, 283 (1925).

"The doctrine of *res ipsa loquitur* is an evidential presumption, not to be invoked to overcome evidence, but to be applied in its absence." *C. & O. Ry. Co.* v. *Tanner*, 165 Va. 406, 420, 182 S. E. 239, 245 (1935); *Norfolk Coca-Cola Wks.* v. *Krausse*, 162 Va. 107, 115, 173 S. E. 497, 499 (1934).

[2] The application of the doctrine, however, does not relieve the plaintiff of the burden of proof to establish defendant's negligence. *Virginia Elec. & P. Co.* v. *Lowry*, 166 Va. 207, 218, 184 S. E. 177, 181 (1936).

In *Hines, Director General* v. *Beard*, 130 Va. 286, 293-294, 107 S. E. 717, 719 (1921); and *Danville Com. Hospital* v. *Thompson, supra*, 186 Va. at 759-760, 43 S. E. 2d at 887, 173 A. L. R. at 532, this court quoted with approval from the oft-quoted case of *Sweeney* v. *Erving*, 228 U. S. 233, 240, 33 S. Ct. 416, 57 L. ed. 815, Ann. Cas. 1914D, 905, the following:

" 'In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur*, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff.' "

In *Danville Com. Hospital* v. *Thompson, supra*, the action was against the hospital for a burn received by an infant shortly after her birth while she was in the complete possession and control of the hospital. There we held that the doctrine of *res ipsa loquitur* was applicable.

We have held, in accordance with the universally accepted rule, that the res ipsa loquitur doctrine is not to be applied in certain malpractice cases against physicians and dentists, primarily because as a matter of common knowledge and experience a bad result affords no presumption of negligence. A physician or dentist is not an insurer of a cure, and an unfavorable result may be attributable to a cause for which he was not responsible and may happen notwithstanding the exercise of a very high degree of care and skill. As a general rule, all that the law demands is that a physician or dentist exercise that degree of skill, care, knowledge and attention ordinarily possessed and exercised by members of the profession in his community under like circumstances; and as to those matters involving professional skill and attention, unskillfulness and negligence must be shown by the testimony of those learned in the profession. *Hunter* v. *Burroughs*, 123 Va. 113, 136, 96 S. E. 360, 366 (1918); *Fox* v. *Mason*, 139 Va. 667, 670, 124 S.E. 405, 406 (1924); *Henley* v. *Mason*, 154 Va. 381, 383-384, 153 S. E. 653 (1930); *United Dentists* v. *Bryan*, 158 Va. 880, 884, 164 S. E. 554, 556 (1932); *Alexander* v. *Hill*, 174 Va. 248, 252, 6 S. E. 2d 661, 663 (1940); *Reed* v. *Church*, 175 Va. 284, 298, 8 S. E. 2d 285, 288 (1940).

[3] The precise question of whether the *res ipsa loquitur* doctrine is applicable in cases where a foreign object, such as forceps or a surgical pad or sponge, has been inadvertently left in the body of a patient by a physician or surgeon has not been decided by this court. However, a great majority of courts of other jurisdictions have applied the doctrine in such cases, since the act of inadverently leaving a foreign object in a patient's body is sufficient to warrant an inference of negligence.[1] The reason for such holding is that the act or omission is of such a nature that it is within the common knowledge of laymen that it could not have occurred without negligence, and expert testimony is not necessary. There are authorities to the effect that the failure of a surgeon to remove a foreign substance from a patient's body constitutes negligence per se.[2]

In 41 Am. Jur., Physicians and Surgeons, § 97, p. 213, it is said:

1. Annot.: Malpractice—Res Ipsa Loquitur, 162 A. L. R. 1265, 1299; Malpractice—Res Ipsa Loquitur, 82 A. L. R. 2d 1262, 1315-1319; Malpractice—Foreign Objects, 10 A. L. R. 3d 9, 41-53, § 8, and the numerous cases collected in the annotations.

2. See the recent case of *Conrad* v. *Lakewood General Hospital*, 67 Wash. 2d 934, 410 P. 2d 785, 10 A. L. R. 3d 1 (1966); Annot.: 65 A. L. R. 1023, 1030; 162 A. L. R. 1265, 1303, and the numerous cases there collected.

"A surgeon undertaking to perform an operation requiring the placing of sponges in the incision does not complete his undertaking until the sponges are properly removed. Many cases of malpractice arising out of surgical operations result from the leaving of surgical sponges or other foreign susbtance in the wound after the incision has been closed. This, it is settled, is at least prima facie negligence by the operating surgeon, although there are many cases which take the view that the failure of a surgeon to remove all sponges or foreign substances from a surgical wound is negligence per se. The fact that the best of surgeons sometimes leave a sponge or other foreign substance in the bodies of their patients does not alter the rule, for this merely exemplifies the fact that almost everyone is at times negligent. Whether such act was negligent in a particular case is for the jury to decide after considering the circumstances of the case."

See the numerous cases collected in the footnotes. See also, 70 C. J. S., Physicians and Surgeons, § 48, i, pp. 969, 970.

Hence there is a recognized distinction between an action based solely upon unsuccessful medical treatment or a bad result and one based upon a specific act or omission by a surgeon occurring during the course of an operation. The courts have reasoned that the failure of a surgeon to remove a foreign object from the body of a patient during the course of an operation creates an inference of negligence or an exception to the general rule that an inference of negligence on the part of a physician or surgeon does not arise from the mere unfavorable result of an operation or treatment.

We hold that the *res ipsa loquitur* doctrine, as we have construed its meaning and effect, was applicable under the facts of this case. Plaintiff's evidence shows that while she was in an unconscious state the defendant was in charge of and in complete control of the operation as "captain of the ship." The inadvertent failure of defendant to remove the lap pad from plaintiff's abdominal cavity before closing the operation wound constitutes such an act or omission in the performance of the duty owed to plaintiff that a layman could infer negligence without the aid of expert testimony. Thus plaintiff's evidence warranted an inference of negligence which should have been left to the jury, and it was error for the trial court to withdraw this question from their consideration.

[4] Plaintiff next contends that the trial court erred in not sus-

taining her motion for a mistrial when defendant's counsel argued to the jury that she had dismissed her former counsel in this case. There is no merit in this contention. The trial court instructed the jury to disregard the argument of counsel and no objection was made or exception taken to the action of the court in not declaring a mistrial.

[5] Lastly, plaintiff says that the trial court erred in permitting defense counsel to ask her about her difficulty and dissatisfaction with other doctors who treated her for injuries received in the 1961 automobile accident.

We are of opinion that these questions were irrelevant and prejudicial to plaintiff's case of negligence in post-operative care, which issue the trial court let go to the jury. On retrial, such questions should not be permitted.

For the reasons stated, the judgment of the court below is reversed and the case is remanded for a new trial.

*Reversed and remanded.*