Sally S. HOTTLE, Personal Representative of the Estate of Douglas A. Hottle, for Herself, Julie Anne Hottle and Karen Elizabeth Hottle, as Beneficiaries, Plaintiff–Appellant,

v.

BEECH AIRCRAFT CORPORATION, Defendant–Appellee.

No. 92–1927.

United States Court of Appeals, Fourth Circuit.

Argued July 27, 1993.

Decided Feb. 3, 1995.

**ARGUED:** John C. Lenahan, Evenson, McKeown, Edwards & Lenahan, Washington, DC, for appellant. Robert T. Hall, Hall, Markle, Sickles & Fudala, P.C., Fairfax, VA, for appellee. **ON BRIEF:** Jeffrey D. Sanok, Evenson, McKeown, Edwards & Lenahan, Washington, DC, for appellant. Holly Parkhurst Lear, Hall, Markle, Sickles & Fudala, P.C., Fairfax, VA, for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Judge RUSSELL and Judge HALL concurred.

## OPINION

WIDENER, Circuit Judge:

■ This appeal presents us with the interesting question of whether a federal court sitting in diversity appropriately deferred to a Virginia rule excluding evidence.[1] The jury returned a verdict in favor of defendant Beech Aircraft Corporation in a wrongful death action brought by Sally S. Hottle for the death of her husband in an airplane accident. Mrs. Hottle contends that the district court's exclusion of internal company documents under a Virginia evidentiary rule, several other evidentiary rulings, and the jury instructions were error. She also challenges the sufficiency of the evidence. Finding no error in the court's deference to the state exclusionary rule in this case, nor any other reversible error, we affirm.

### I. Facts

In the late evening hours of October 25, 1989, a Beech Baron 58P airplane crashed shortly after take-off from Manassas Airport in Virginia, killing its pilot and sole occupant, Douglas A. Hottle. The Beech Baron 58P was a six-passenger, twin-engine propeller plane designed and built by Beech Aircraft Corporation (Beech) in 1981–82. Hottle and a partner bought the aircraft from its original purchaser in April, 1989. The plane was on its first flight following repair and reinstallation of the actuator trim tabs by a mechanic at Manassas Airport. National Transportation Safety Board investigators determined that the trim tab actuators, an essential component of the aircraft's flight control systems located on the tail of the plane, had been reversed, which was taken by all to be the cause of the crash. On October 11, 1991, Mrs. Hottle, on behalf of herself and her two children, filed a complaint for the alleged wrongful death of her husband against the Beech Aircraft Corporation on the grounds

---

1. It is generally true that the Federal Rules of Evidence require a district court sitting in diversity to defer to applicable state rules on presump- tions, privileges, and competency. See Fed. R.Evid. 302, 501, 601.

of negligent design, negligent failure to warn, and breach of warranty.

Beech engineers designed the Baron series aircraft using an elevator trim tab control system with dual actuators, left and right, to control the trim tab deflector. The actuators are visually similar and are physically, but not functionally, interchangeable.[2] Thus the left one can be mounted on the right side of the aircraft but should not be. Interchanging of the actuators allows the trim tabs to deflect beyond their normal limits, in a direction opposite from that anticipated by the pilot, so that the aircraft becomes uncontrollable. To prevent such an occurrence, there are several safeguards: visually distinguishable physical shape of key internal part, the "actuator screw;" See *supra,* footnote 2; clear warnings and directions in the Beech Maintenance Manual (to which Federal Air Regulations (FARs)[3] require strict compliance) for separate disassembly and repair of left and right actuators, including tagging of parts; post-maintenance visual and functional inspection of crucial flight control systems by the mechanic is mandated under the FARs and the Beech Maintenance Manual; and FARs and Beech's Pilot Operating Handbook require post-maintenance check of direction and range of travel of crucial flight control surfaces by the pilot.

Evidence established that the mechanic who repaired Hottle's plane incorrectly installed the left actuator on the right side of the plane and vice versa. Evidence also indicated that in doing the repairs, the mechanic failed to follow FAR-mandated compliance with the procedures set out in Beech's maintenance manuals and his training. The evidence also suggested that pilot error contributed to the accident, as there was testimony that while Hottle performed a visual inspection of the plane, a prudent pilot would have checked for proper deflection of the trim tabs after any repair of these crucial flight control systems. There was also testimony which indicated that Hottle negligently failed to abort take-off when he noticed, or should have noticed, the enormously increased gear-stick pressure during take-off.

Mrs. Hottle argued that the trim tab actuators could have and should have been designed to prevent their being reversed, and that Beech failed to give adequate warnings to the mechanic and the pilot of risks associated with such a reversal. Mrs. Hottle also introduced testimony of a general industry standard and a FAR requiring design of flight control systems so that they can not be installed incorrectly or interchanged. Her experts gave specific examples of designs that might have eliminated or reduced the risk of reversing the actuators.

Beech argued that it was not negligent in its design of the Baron control system, that the warnings given in the Maintenance Manuals were clear and sufficient, that the act of the mechanic was an intervening cause, and that the pilot was contributorily negligent. Beech further asserted that it could not reasonably foresee that a mechanic would ignore FARs and its installation instructions in light of the warnings in its manuals.

Following a trial from June 1–4, 1992, the jury returned its verdict for Beech on all counts. The court denied Mrs. Hottle's motion for a new trial, and this appeal followed. Mrs. Hottle claims that the court committed reversible error in several of its evidentiary rulings and in the jury instructions. She also claims that the jury's verdict was against the weight of the evidence. We find all of the challenges without merit, and will address at some length only the court's deference to a Virginia exclusionary rule.

II.

Mrs. Hottle first challenges the district court's exclusion of the Beech Engineering Manual which she offered on the issues of industry standard for safe flight control design, alternative design feasibility, and

---

2. While the left and right actuator housings are externally physically identical except for engraved serial identification numbers, the internal components (the "actuator screws") responsible for proper left or right functioning are visually distinguishable to the naked eye by large identifiable threads: the screw for the left actuator spirals clockwise, and the screw for the right actuator spirals counter-clockwise.

3. Promulgated by the Federal Aviation Administration.

Beech's knowledge of industry standards. The district court, relying on a Virginia rule of evidence excluding a party's internal rules and regulations to show negligence, granted Beech's pretrial motion to exclude the documents. The court noted that, as a matter of public policy, Virginia courts have held that internal rules of a party "are not admissible to prove negligence or set a standard against which a party's duties are to be assessed." Notwithstanding this ruling, Mrs. Hottle offered a page from the Engineering Manual as evidence of the industry standard on safe design known as "Go Right—No Go" during cross-examination of Beech's engineer expert.[4] The court stated that it had already ruled on the admissibility of the manual and did not allow the page to be introduced. Mrs. Hottle argues that admissibility should have been determined under the Federal Rules of Evidence and that the court erred in deferring to Virginia's exclusionary rule.

■ As noted, we are presented with the question under the *Erie* line of cases as to whether the Federal Rule of Evidence, which, for the purpose of argument, we assume would allow the evidence to be admitted,[5] or the state rule should control in this diversity case. Although we review some decisions regarding admission of evidence under an abuse of discretion standard, we review *de novo* the legal analysis underlying this aspect of the district court's decision.

■ In *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Supreme Court held that because Congress had no power to declare substantive rules of common law applicable in a state, federal courts sitting in diversity must apply state substantive law, decisional as well as statutory, in the adjudication of state-created rights. Thus, began the general rule that a federal court is to apply state substantive law and federal procedural law in diversity cases. See *Stonehocker v. General Motors Corp.*, 587 F.2d 151, 154 (4th Cir.1978). However, the Supreme Court has also noted that where a state's procedural rule is bound up with substantive policy, a federal court is to apply the state rule. *Byrd v. Blue Ridge Rural Elec. Co-op.*, 356 U.S. 525, 535, 78 S.Ct. 893, 899, 2 L.Ed.2d 953 (1958).[6] Yet, in a more recent case involving a conflict between Federal Rule of Civil Procedure 4(d)(1) and a state service of process rule, the Court rejected the substantive-procedural test in that context and found the federal rule controlling under the authority of the Rules Enabling Act. *Hanna v. Plumer*, 380 U.S. 460, 469–73, 85 S.Ct. 1136, 1143–45, 14 L.Ed.2d 8 (1965). The Court explained that "*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules differ from comparable state rules." 380 U.S. at 473, 85 S.Ct. at 1145. Accordingly, we, along with other courts of appeals, have held that the Federal Rules of Evidence, as validly enacted procedural rules, govern in diversity cases. See *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir.1986).

However, there is no uniformity among the circuits as to whether the federal rules control when a state evidentiary rule either embodies or is closely tied to a state substantive policy. See *Stonehocker*, 587 F.2d at 154–

---

4. The page stated a Beech company policy on the safe design of control systems, entitled "GO RIGHT OR NO GO".

5. In determining the admissibility of the Beech Manual, we must first determine if there is any conflict between federal and state law. *Stonehocker v. General Motors Corp.*, 587 F.2d 151, 154 (4th Cir.1978). Because the court did not determine admissibility under the federal rules and because we find none of those rules to particularly exclude such evidence, we assume that the Manual would have been admitted under Rule 402's broad mandate to allow all relevant

evidence. 587 F.2d at 155. In that event, we would have a conflict with Virginia's exclusionary rule.

6. In *Byrd* the court held that South Carolina's procedural rule allowing the judge to make factual determinations in deciding applicability of a statutory defense is not so bound up with state-created rights and obligations as to require its application in federal courts under *Erie*. 356 U.S. at 535–37, 78 S.Ct. at 899–900. The court noted that the rule was rooted in mere administrative "practical considerations." 356 U.S. at 536, 78 S.Ct. at 900.

55;[7] see also 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2405, at 326–7 (1971 & Supp.1994). In such a situation, application of the federal rule of evidence, although beyond argument procedural, may encroach upon a State's substantive law. This Circuit, along with the First, Third, Fifth, Seventh, Eighth, and Tenth have held that although the Federal Rules of Evidence typically govern in diversity cases, "there are circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule ... will be followed in order to give full effect to the state's substantive policy." *DiAntonio v. Northampton–Accomack Memorial Hosp.*, 628 F.2d 287, 291 (4th Cir. 1980) (Virginia Malpractice Act provision allowing opinion of arbitration panel to be admitted at subsequent trial controls); see, e.g., *Banko v. Continental Motors Corp.*, 373 F.2d 314, 316 (4th Cir.1966) (noting federal evidentiary rule will be applied, where state substantive policy is not implicated), *Barron v. Ford Motor Co.*, 965 F.2d 195, 198–201 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992); *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 434–40 (3d Cir.1992); *Potts v. Benjamin*, 882 F.2d 1320, 1324 (8th Cir.1989); *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 245 (1st Cir.1985); *Moe v. Avions Marcel Dassault–Breguet Aviation*, 727 F.2d 917, 930–33 (10th Cir.), *cert. denied*, 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984); *Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1168–70 (5th Cir.1979); *Conway v. Chemical Leaman Tank Lines, Inc.*, 540 F.2d 837, 838 (5th Cir.1976).

■ Virginia first made the substantive policy behind her rule excluding private internal rules clear in 1915. That court held that "[a] person cannot, by the adoption of private rules, fix the standard of his duties to others. That is fixed by law, either statutory or common. Private rules may require of employes less or more than is required by law; and whether a given course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party." *Virginia Ry. & Power Co. v. Godsey*, 117 Va. 167, 83 S.E. 1072, 1073 (1915). In *Godsey* the court held that the safety rules of a street car company were inadmissible in a personal injury action initiated against the company by a passenger. 117 Va. 167, 83 S.E. 1072. In face of the contemporary view of a majority of the States that such documents are admissible, the Virginia Supreme Court recently re-evaluated and reaffirmed the soundness of its policy, and held that the internal rules of the State Highway Department were not admissible in a suit against an employee and explicitly reaffirmed its holding in *Godsey*. *Pullen v. Nickens*, 226 Va. 342, 310 S.E.2d 452, 457 (1983). Clearly, the Virginia rule is sufficiently bound-up with state policy so as to require its application in federal court. We are thus of opinion that the district court was correct in applying Virginia's rule to exclude the Beech Engineering Manual.[8]

### III.

The district court correctly excluded subsequent remedial airworthiness notices and

---

7. In *Stonehocker*, a case quite factually similar to the one at hand, we noted that the procedural-substantive distinction has been particularly difficult to apply to evidence law. 587 F.2d at 154. In a negligence action arising from a car accident, defendant argued that the court erred in refusing to admit Federal Motor Vehicle Safety Standard 216 which tended to show that it had complied with industry standards for safe roof design. 587 F.2d at 154. Plaintiffs contended that state evidentiary rules would exclude such evidence. 587 F.2d at 154. (The district court had excluded the Standard under the federal rules.) We reversed, stating that the Standard was admissible relevant evidence under the federal rules. 587 F.2d at 154–57. We did not answer the perplexing *Erie* issue because no spe-

cific state evidentiary rule was identified. 587 F.2d at 156. However, we suggested that where a state evidence rule embodied a substantive policy, the state rule would govern. 587 F.2d at 155–56.

8. We also note that there is no countervailing federal interest compelling application of the federal rules in this case. See *United States v. Cartledge*, 928 F.2d 93, 95–96 (4th Cir.1991) (federal interest in enforcing criminal statute outweighs state legislative privilege); *Leitman v. McAusland*, 934 F.2d 46, 50 (4th Cir.1991) (state exclusionary rule does not apply to transcript when federal law clearly made unacknowledged taping of conversation lawful).

color-coding provisions with respect to the trim tabs. See Fed.R.Evid. 407.

We find no abuse of discretion in the rulings of the district court as it admitted evidence of a mock-up; federal aviation regulations with respect to maintenance; stick forces (both competency and relevancy rulings); and the safety record of that type of aircraft. The district court also did not abuse its discretion in declining to admit evidence in rebuttal which was properly admissible in chief.

The district court correctly declined to permit one witness to comment on the testimony of another.

■ The district court properly held that Virginia law permits contributory negligence as a defense in failure to warn cases. *Featherall v. Firestone Tire and Rubber Co.,* 219 Va. 949, 252 S.E.2d 358, 368 (1979).

We also are of opinion that the evidence in this case amply supports the verdict.

There are nine assignments of error in this case, three of which, taken together, have eight principal subdivisions; and one of the subdivisions has three sub-subdivisions. We have alluded to, directly or indirectly, most of the assignments of error, and, whether mentioned or not, we have examined all of the assignments of error and are of opinion they are without merit.

The judgment of the district court is accordingly

*AFFIRMED.*