**James H. BLEVINS, etc., Plaintiff,**

v.

**Bhagvan SHESHADRI, M.D., et al., Defendants.**

No. 2:02 CV 00043.

United States District Court, W.D. Virginia. Big Stone Gap Division.

April 15, 2004.

Anthony M. Russell, Gentry Locke Rakes & Moore, Roanoke, Virginia, for Plaintiff.

Paul C. Kuhnel, WootenHart, PLC, Roanoke, Virginia, for Defendants Bhagvan Sheshadri, M.D., and Sheshadri, M.D., P.C., B.

## OPINION AND ORDER

JONES, District Judge.

This medical malpractice case presents the question of a surgeon's liability under Virginia law for the negligence of a nurse anesthetist assisting in the operation. The defendant surgeon has moved for summary judgment on the ground that the plaintiff has presented no expert evidence that he violated the applicable standard of care. While I agree that the surgeon is not directly liable, I find that there is a jury issue as to his liability based on the doctrine of respondeat superior.

### I

On August 18, 2000, James B. Blevins, eighty-two years old, was operated on by Bhagvan Sheshadri, M.D.,[1] a urologist, at Norton Community Hospital, in Norton, Virginia. The operation, a cystoscopy,[2] had as its purpose the exploration and correction of a possible obstruction of Blevins' right ureter. Assisting in the surgical procedure was James Preston Levya, a certified registered nurse anesthetist ("CRNA"). While Levya actually administered the anesthesia, Dr. Sheshadri chose the type of anesthesia, which was "conscious sedation." He chose this type because

> [f]or one reason, [the patient] had multiple medical problems. He had obstruc-

---

1. There are two defendants involved in the present motion, Dr. Sheshadri and his professional corporation, Sheshadri, M.D., P.C., B., also referred to as B. Sheshadri, M.D., P.C. The interests of Dr. Sheshadri and his professional corporation are presently the same and for simplicity's sake, no distinction will be made between them in this opinion.

2. Cystoscopy is a procedure in which a tube-like instrument, a cystoscope, is introduced into the urinary system. *See* 2 J.E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* C–554 (1999).

tive lung disease, and I was not too sure about his severity of gastroesophageal reflux. And considering his age, I felt that a conscious sedation would be a better procedure, as all the stent placements in all the hospitals where I do is [sic] being done under conscious sedation.

(Sheshadri Dep. 47–48.)

CRNA Levya held a locum tenens (temporary fill-in) position at the hospital. Dr. Sheshadri did not know him, but was told who he was by one of the nurses. Virginia licensure law requires that a CRNA be under the medical direction and supervision of a licensed physician when administering anesthesia.[3] No anesthesiologist was present at the hospital at the time of operation, and the hospital had a written policy providing that if an anesthesiologist was not present at the hospital, the surgeon performing the operation was the supervisor of the CRNA. Dr. Sheshadri testified in his discovery deposition in this case that he had not understood that he had been supervising Levya during the surgery and indeed, "[t]hat thought never came to my mind." (*Id.* at 18.)

After completion of the surgery, as Blevins was being transferred from the operating table to a stretcher, he vomited a significant amount of "coffee ground vomitus." (*Id.* at 73–74.) Levya attempted to suction this material from around the patient's airway. Later, in the recovery room, Blevins vomited again. Because of his aspiration of gastric contents causing damage to his lungs, Blevins developed adult respiratory distress syndrome and died from this condition on September 4, 2000.

Following Blevins' death, the administrator of his estate filed the present wrongful death action against Dr. Sheshadri and the hospital.[4] Thereafter an amended complaint was filed, adding Levya's administrator as an additional defendant, Levya having died in the meantime.[5] Based on the opinions of an expert witness, Lawrence Larson, M.D., a board-certified anesthesiologist licensed in Virginia, the plaintiff contends that Blevins was negligently sedated too heavily during the surgery, causing his aspiration of gastric contents, which led to his death.

Dr. Sheshadri has moved for summary judgment in his favor, arguing that there is no evidence that he violated any standard of care. The motion has been briefed and argued, and is ripe for decision.

## II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see* Fed.R.Civ.P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favor-

---

**3.** *See* 18 Va. Admin. Code § 90–30–120 (West 2003) (providing that "a certified registered nurse anesthetist shall practice ... under the medical direction and supervision of a doctor of medicine ...") (regulation adopted jointly by the Boards of Medicine and Nursing pursuant to authority granted by Va.Code Ann. §§ 54.1–2400,–2957 (Michie 2002 & Supp. 2003)).

**4.** Jurisdiction of this court exists pursuant to diversity of citizenship and amount in controversy. *See* 28 U.S.C.A. § 1332(a) (West 1993 & Supp.2003).

**5.** The plaintiff also added PMAG, Inc., formerly known as Promed Assistance Group, Inc., as Levya's employer, but later agreed to the dismissal of that defendant. This opinion does not speak to the liability of Levya's administrator or the hospital.

able to the non-moving party. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

■■■■ To establish a prima facie case of medical malpractice, the plaintiff must establish: (1) the applicable standard of care, (2) that the standard has been violated, and (3) that there is a causal relationship between the violation and the alleged harm. *See Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir.1982). In a diversity case, these substantive elements of the negligence claim are questions of state law. *See id.* Under Virginia law,[6] the definition of standard of care is "that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or speciality in this Commonwealth." Va. Code Ann. § 8.01–581.20(A) (Michie Supp. 2003). Moreover, in order to establish the standard of care and its violation, expert testimony is normally required. *See Fitzgerald* at 347, 350.

It is clear that no evidence has been presented that Dr. Sheshadri personally violated any applicable standard of care. The plaintiff's sole expert witness, Dr. Larson, testified in his deposition as follows:

Q. [I]n this particular case, are you offering an opinion that Dr. Sheshadri breached the standard of care of a urologist practicing in the Commonwealth in any way?

A. No.

Q. So as far as you're concerned, you don't think that Dr. Sheshadri did anything wrong?

A. Well, I didn't say that. I will say that somewhere along the way, and I may as well just make this statement, maybe this will satisfy everything. The law says the CRNA has got to be supervised. Somebody has to have been supervising this CRNA. I have

no clue who was supervising that CRNA. The facts as I understand them are that the anaesthesiologist at this hospital was not even on the premises at the time that this case was performed. I don't know how you can say that he was supervising this CRNA. Dr. Sheshadri was in the operating room, but he was doing his urology thing, and I don't know that you could say that he was supervising the CRNA. I think its going to take a bunch of legal minds to figure out who was responsible here because I don't know. All I know is the law says somebody had to supervise, and as far as I can see nobody was.

. . . .

Q. [T]here is really is [sic] nothing that Dr. Sheshadri could have done or—to change the outcome in this case, is that right?

A. You know, I have to say I don't know. I don't know what Dr. Sheshadri could have done. This whole thing is just a big black hole for me as far as when you get to issues of who's responsible for what regarding the anesthesia care. Without a doubt the CRNA is responsible, that person actually administered it. But when you get to who's in charge of the CRNA, I haven't any clue. If Dr. Sheshadri by his mere presence took on supervision, then he's responsible. If he doesn't-that's a legal question. I can't answer that.

(Larson Dep. 68–70.) Dr. Larson plainly does not opine that Dr. Sheshadri acted negligently as a surgeon in failing to prevent or correct the mistakes of the CRNA. For example, there is no expert testimony that Dr. Sheshadri chose the wrong type of anesthesia, or unreasonably failed to

---

**6.** The parties agree that Virginia law applies in this diversity action.

observe that the patient was being too heavily sedated by the CRNA.

Moreover, since Dr. Larson is an anesthesiologist and not a surgeon or a urologist, he likely would not be qualified under Virginia law to express any such opinion. *See* Va.Code Ann. § 8.01–581.20(A) (providing that "[a] witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's speciality and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's speciality or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action"); *Peck v. Tegtmeyer,* 834 F.Supp. 903, 909–910 (W.D.Va.1992) (holding that expert qualification requirements of § 8.01–581.20(A) apply in federal diversity actions), *aff'd,* No. 92–2412, 1993 WL 341065, at *1 (4th Cir. Sept. 8, 1993) (unpublished).

■ The more serious question is whether Dr. Sheshadri can be held vicariously liable under these facts for any negligence of the CRNA assisting in the operation.

The imputed liability of a surgeon for the negligence of medical professionals assisting in the surgery has been approached differently by different courts. At one extreme, surgeons have been found strictly liable under the "captain of the ship" doctrine, by which the surgeon is deemed liable as a matter of law for all acts of negligence occurring in the operating room on the ground "that it is his duty to control everything going on in the operating room." *Thomas v. Raleigh Gen. Hosp.,* 178 W.Va. 138, 358 S.E.2d 222, 224–25 (1987) (rejecting "captain of the ship" doctrine where surgeon was sued based on negligence of anesthesiologist and nurse anesthetist in inserting and removing tracheal tube).

To be fair, many of the opinions applying the "captain of the ship" doctrine involved res ipsa loquitur situations, such as leaving a sponge in the patient. For example, in *Easterling v. Walton,* 208 Va. 214, 156 S.E.2d 787, 791 (1967), the surgeon is described in the opinion as the "captain of the ship" but the issue was simply the direct liability of the surgeon based on the application of the doctrine of res ipsa loquitur where a surgical pad was discovered in the patient's body after an appendectomy.[7] *Easterling* did not involve vicarious liability and I agree with another judge of this court that the decision does not mean that Virginia has adopted the "captain of the ship" doctrine. *See Peck v. Tegtmeyer,* 834 F.Supp. at 906 (Kiser, J.).

The Virginia rule governing this situation is found in *Whitfield v. Whittaker Memorial Hospital,* 210 Va. 176, 169 S.E.2d 563 (1969). In *Whitfield,* a patient undergoing a tonsillectomy died from shock after an anesthetic gas administered by a nurse anesthetist was negligently allowed to enter the patient's stomach, causing it to rupture. 169 S.E.2d at 566. As in this case, the patient's administrator sued the hospital, the surgeon, and the nurse anesthetist for wrongful death. *See id.* at 564. After the evidence was presented at trial, the trial judge struck the

---

**7.** For a scholarly discussion of the history and various formulations of the "captain of the ship" theory, see *Franklin v. Gupta,* 81 Md. App. 345, 567 A.2d 524 (Md.Ct. Spec.App.1990), in which the court rejected the doctrine and held that a surgeon was not vicariously liable for the negligence of an anesthesiologist and a CRNA. 567 A.2d at 539. *See also Harris v. Miller,* 335 N.C. 379, 438 S.E.2d 731, 736–38 (1994) (discussing history of doctrine and holding that surgeon is not vicariously liable for negligence of nurse anesthetist simply because the surgeon is "in charge" of the operation).

evidence as to the surgeon and entered judgment for him. *Id.*

The Virginia Supreme Court held that to determine whether the nurse anesthetist was the temporary agent of the surgeon during the operation, and thus impute her negligence to him under the doctrine of respondeat superior, "it is necessary that [the agent] not only be subject to the [principal's] control, or right of control, with regard to the work to be done and the manner of performing it, but the work has to be done on the business of the principal or for his benefit." *Id.* at 567. The court noted that "[a]ctual control, however, is not the test; it is the right to control which is determinative." *Id.* Citing facts showing the surgeon's "supervisory control" over the nurse anesthetist, the court held that the vicarious liability of the surgeon was a jury issue, and remanded the case for trial. *Id.* at 568.

In accord with the *Whitfield* decision, and considering the evidence and its reasonable inferences in a light most favorable to the plaintiff, I find that there is a genuine issue of material fact as to whether CRNA Levya was the temporary agent of Dr. Sheshadri with regard to this surgery. It is true that Dr. Sheshadri disclaims that he had any right of control of the method of administration of anesthesia by Levya, but the hospital's written policy implies that he did.[8] Perhaps "supervision" as described in the hospital's policy means something different than right of control, but I cannot make that decision on this record. Based on the evidence and proper instructions, whether Levya was the temporary agent of Dr. Sheshadri will be a question for the jury.

---

8. Dr. Sheshadri argues that the hospital's written policy is inadmissible under state law as a "private internal rule," citing *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir.1995). However, the policy here is not

## III

For the foregoing reasons, it is **ORDERED** as follows:

1. That the Motion for Summary Judgment by defendants Bhagvan Sheshadri, M.D., and Sheshadri, M.D., P.C., B. is granted in part and denied in part;

2. That summary judgment in favor of said defendants is granted as to the issue of whether Dr. Sheshadri was personally negligent; and

3. That summary judgment in favor of said defendants is denied as to the issue of whether said defendants are liable for any negligent acts or omissions of James Preston Levya based on the doctrine of respondeat superior.

submitted to prove "negligence or set a standard against which a party's duties are to be assessed," *id.* at 109, but to show the relationship between Dr. Sheshadri and the CRNA.