**Shelby Marie Wetzel LEE, an infant, etc. and Dorothy Lynn Wetzel, Plaintiffs,**

v.

**Mamerto B. ADRALES, M.D. and Michael Lassere, M.D., Defendants.**

**Civ. A. No. 90–0484–R.**

United States District Court, W.D. Virginia, Roanoke Division.

Oct. 28, 1991.

C. Richard Cranwell, Patrick S. Shiel, James E. Bucholtz, Cranwell & Moore, Roanoke, Va., William T. Wilson, Wilson and Associates, Covington, Va., Jack Coulter, Coulter & Coulter, Roanoke, Va., for plaintiffs.

Gregory T. St. Ours, Roy W. Ferguson, Jr., Charles F. Hilton, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for Mamerto B. Andrales, M.D.

George W. Wooten, Susan Waddell Spangler, Wooten & Hart, P.C., Roanoke, Va., Michael McHale Collins, Collins, Crackel & Mooney, Covington, Va., for Michael Lassere, M.D.

## MEMORANDUM OPINION

TURK, Chief Judge.

This medical malpractice action was brought by Dorothy Lynn Wetzel on behalf of herself and her infant daughter, Shelby Marie Wetzel Lee. On August 13, 1991, the jury returned a verdict for Defendant Dr. Adrales, but found for Plaintiffs as against Defendant Dr. Lassere. Defendant Dr. Lassere has moved the Court to set aside the verdict and grant a new trial, pursuant to Fed.R.Civ.P. 59, on the grounds that the verdict is contrary to the weight of the evidence, the jury was improperly instructed, and the Court erred in permitting certain experts to testify. For the reasons outlined below, the Court denies this motion. However, the Court will grant Defendant's motion to reduce the amount of damages awarded so the verdict complies with Virginia's medical malpractice judgment limit. *See* Va.Code Ann. § 8.01–581.15 (1950 and Supp.1991). Further, the Court will deny Defendant's motion seeking a credit of $40,000.00 paid by Allegheny Regional Hospital to Milton Byrle Lee in settlement of his Federal Consolidated Omnibus Budget Reconciliation Act (COBRA) 42 U.S.C. § 1395dd *et seq.* claim, but will allow a credit for the settlement amounts paid to Ms. Wetzel and Shelby Wetzel Lee.

## I.

■ At trial, the Court permitted Dr. Carolyn S. Crawford to testify regarding the standard of care for a Virginia obstetrician. Defendants objected, asserting *inter alia*, that Dr. Crawford did not have an active practice of obstetrics in Virginia, or elsewhere, as her practice focused on perinatology and neonatology.

Federal Courts have wide discretion, under the Federal Rules of Evidence, to admit expert testimony which may be helpful to the jury. The Court believes it would have been an abuse of discretion to exclude Dr. Crawford's testimony, for the practice of perinatology is the branch of *obstetrics* and pediatrics which focuses on the period shortly before, during, and after birth. *See* 4 J.E. Schmidt, *Attorneys' Dictionary of Medicine* P–122 (1991); *Dorland's Illustrated Medical Dictionary* 1127 (24th ed. 1965). Thus, the Court believes that Dr. Crawford's practice overlaps with that of Defendant Dr. Lassere, and she was qualified to offer her expert opinions.

## II.

■ Defendant Dr. Lassere next contends that the Court instructed the jury improperly on the use of expert testimony in determining whether the defendants deviated from the appropriate standard of care. The jury was charged that:

Physicians are not held liable, however, for honest errors of judgment. They are allowed a wide range in the exercise of their judgment and discretion. To hold a physician liable, it must be shown that the course which he pursued was against the course recognized as correct by his profession, but where a physician's duty to a patient and a subsequent breach of that duty are so obvious as to be apparent to persons of common experience, then the plaintiff is not required to establish such duty and its breach through the use of expert testimony.

. . .

In an action based on medical malpractice such as this, unless the defendant's negligence is so obvious as to be a matter of common knowledge, the only way

in which you can properly determine whether or not his conduct was a deviation from the appropriate standard of care such as constitutes negligence is through the testimony of experts. This does not mean, however, that you are to consider yourselves bound by the opinion of any one of the experts. Some such opinions may be properly discarded, even where there is no evidence to contradict them. Where the opinions are in conflict, it is for you as the triers of fact to determine which is the more worthy of credence. In such a case, in determining what is the greater weight of evidence, you should not content yourselves with a mere counting of the number of witnesses, but you consider their ability, qualifications and credibility.

This charge is a proper statement of the law in Virginia. The standard Virginia jury instruction on expert witnesses allows the jury to assess each expert's education and experience, the soundness of her reasoning, and the weight of her opinion when considered against the other facts of the case. However, the Court clearly stated in its charge that the only way the jury could properly find a deviation from the standard of care was on the basis of expert testimony.

In petitioning the Court to grant a new trial, Defendant cites *Reed v. Church*, 175 Va. 284, 8 S.E.2d 285 (1940). In *Reed*, the jury which found Dr. Reed had committed malpractice was properly charged that:

[I]n considering and weighing the testimony of experts in this case, it is your duty to also consider and weigh the same in connection with all the other evidence in the case and all facts and circumstances established by the preponderance of the evidence, and you should apply sound judgment to the sifting and weighing of the evidence in order to reach a verdict.

*Reed v. Church*, 8 S.E.2d at 290. Instructions Nos. 1 and 4 in *Reed* correctly informed the jury that "[w]hether the measure or standard of medical care has been exercised can only be decided upon expert medical testimony." *Id.* at 290. The Virgi-

nia Supreme Court found these instructions, when considered together, properly stated the law on this point. *Id.* at 290–91. Similarly, in the case at bar, the Court's charge, considered in its entirety, correctly states the law.

## III.

█ Defendant also asserts that the weight of the evidence is contrary to the jury's verdict. Fed.R.Civ.P. 59 gives a district court the discretionary authority to grant a new trial under certain circumstances. A court can grant a new trial when a "verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Aetna v. Yeatts,* 122 F.2d 350, 352–53 (4th Cir.1941). A Rule 59 motion is unlike a motion for judgment notwithstanding the verdict, which requires the Court to view the evidence in the light most favorable to the nonmoving party and that all conflicts be resolved in that party's favor, because the motion for a new trial requires the Court to consider the weight of the evidence. Nevertheless, in setting aside the verdict as contrary to the clear weight of the evidence, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have redrawn different inferences or conclusions or because judges feel that other results are more reasonable." *Cities Serv. Oil Co. v. Launey,* 403 F.2d 537, 539–40 (5th Cir. 1968) (quoting *Tennant v. Peoria & Pekin Union Ry. Co.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944).

█ After the jury returned its verdict, the Court expressed its doubts as to the accuracy of the decision. However, after reviewing all of the evidence, the Court is not left with the definite and firm conviction that a mistake was committed. *See, e.g.,* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2806 at 49 (1973)

(citing supportive authorities). During the trial, qualified medical experts gave conflicting testimony concerning whether defendant had complied with the applicable standard of care. Thus, although the Court still harbors serious doubts about the verdict, it declines to exercise its discretion and order a new trial.

## IV.

█ Defendant Dr. Lassere also requested that the Court reduce the jury's verdict so as to conform with Va.Code Ann. § 8.01–581.15 (1950 and Supp.1991), which limits recovery in medical malpractice actions to one million dollars per patient. This Court must apply the damage cap to the present action and reduce the jury's two million dollar award[1] to Shelby Marie to $880,000.00. This amount, when added to the $120,000.00 awarded for the infant's past medical expenses, is the maximum recovery permitted under Va.Code Ann. § 8.01–581.15. Plaintiff argues that the child's medical expenses should be included in Ms. Wetzel's damages, rather than in the child's damages. Such a holding would permit plaintiffs to recover an additional $120,000.00 because the mother's damage award, even with the medical expenses added to it, would not exceed the statutory cap.

Although the Court sympathizes with the plaintiffs and the enormous medical expenses and personal suffering which they will face in the future, it is unable to contravene the clear language of § 8.01–581.15 and the Virginia Supreme Court's interpretation of that Code section. In *Bulala v. Boyd,* the Virginia Supreme Court reaffirmed that a parent's cause of action for medical and incidental expenses was derivative of the child's action. 239 Va. 218, 230, 389 S.E.2d 670, 676 (1990). "Because the expense claim is derivative," that court held, "the total damages recoverable for the child's injury, *including this derivative claim,* is limited to the statutory

---

1. The jury's verdict awarded the following damages:
   Dorothy Lynn Wetzel: $100,000.00
   Shelby Marie Wetzel Lee: $2,000,000.00

Medical expenses and related expenses, from birth until present, for Shelby Marie Wetzel Lee: $120,000.00

amount." *Boyd*, 239 Va. at 230, 389 S.E.2d 670 (emphasis added). The Court is unconvinced by Plaintiffs' admirable attempt to distinguish *Boyd* and limit its application to the facts of that case. The legislative history, the statute's language, and the Virginia Supreme Court's decisions leave no question that the child's medical expenses must be included in her own damage award. Thus, the Court must reduce the jury award.

## V.

█ Finally, Defendant urges the Court to reduce the judgment amount by $40,000.00 for monies paid by Allegheny Regional Hospital to Milton Byrle Lee, Shelby Wetzel Lee's father, in settlement of his claim under the Federal Consolidated Omnibus Budget Reconciliation Act (COBRA). 42 U.S.C. § 1395dd. It is Defendant's contention that, if Allegheny is a joint tortfeasor, he is entitled to a set-off. Shelby Wetzel Lee and Dorothy Wetzel settled with the hospital for $1.00 each for their COBRA and malpractice claims. Milton Lee settled his COBRA claim for $39,997.00 and his malpractice claim for $1.00. The Court agrees that defendant Dr. Lassere is entitled to have the judgment against him reduced, but Mr. Lee's damages are separate from those of his daughter and Ms. Wetzel. Dr. Lassere must be credited with $1.00 from Ms. Wetzel's settlement agreement and $1.00 from Shelby Wetzel Lee's settlement agreement. The Court thus reduces Ms. Wetzel's $100,000.00 award to $99,999.00 and further reduces Shelby Wetzel Lee's $120,000.00 for medical and related expenses to $119,999.00.

## CONCLUSION

In summary, the Court finds that it was not error to permit Dr. Crawford and Plaintiffs' other experts to testify. The Court finds the jury was properly charged. Furthermore, the jury's verdict is not contrary to the weight of the evidence. Accordingly, the Court will enter an Order denying Defendant's motion for a new trial, and granting judgment in favor of the plaintiffs.

Additionally, the Court holds that the medical expense award must fall within the child's damage recovery, thus requiring the Court to reduce the jury award for the child to $880,000.00. Finally, the Court holds Dr. Lassere is entitled to set-off the settlement amounts Ms. Wetzel and Shelby Wetzel Lee received from Allegheny Regional Hospital which further reduces Ms. Wetzel's award to $99,999.00 and reduces Shelby Wetzel Lee's $120,000.00 for medical and related expenses to $119,999.00. An appropriate Order shall be entered this day.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, and in light of the jury verdicts, it is hereby

## ADJUDGED and ORDERED

as follows:

(1) Judgment is entered in favor of Dr. Adrales and Plaintiffs shall recover nothing from him;

(2) Defendant Dr. Lassere's motion to set aside the jury verdict is DENIED;

(3) Judgement is entered in favor of Plaintiffs as against Dr. Lassere, and

Plaintiffs shall recover the following damage awards, which reflect the reduction required by the Virginia malpractice damage cap and the required set-offs of their settlement awards:

(a) Shelby Wetzel Lee: $880,000.00

(b) Dorothy Lynn Wetzel: $99,999.00

(c) Dorothy Lynn Wetzel for medical expenses incurred by her on behalf of her daughter Shelby Wetzel Lee: $119,999.00.

The above amounts shall begin accruing interest, at the legal rate, from October 28, 1991, until paid, and, in accordance with the jury verdict, no prejudgment interest will be awarded.

The Clerk of Court is directed to strike this case from the Court's active docket

and to send certified copies of this ORDER to counsel of record.