# CIRCUIT COURT OF THE CITY OF ROANOKE

Fred W. Carper,
Administrator
of the Estate of
Orval Duval Carper,
deceased

v.

David P. Minichan, Jr., et al.

March 2, 1998

Case No. CL97000151-00

By Judge Jonathan M. Apgar

Defendants, David P. Minichan, Jr., M.D., James T. Callis, M.D., and Jefferson Surgical Clinic, Inc., have moved to dismiss this suit, claiming that Plaintiff's sole expert witness fails to meet the requirements for qualification of an expert in a medical malpractice case as stated in Virginia Code 8.01-581.20. Defendants claim that Plaintiff's proffered expert witness, Dr. Loiacono, is not qualified to testify as an expert because she was a surgical resident during part of the year following the alleged malpractice and arguably did not have an "active clinical practice" (and further, that she could not have her own "practice" at all) in the Defendant physician's specialty, as required by the statute. The Court finds that although Dr. Loiacono was a surgical resident at the time in question, this does not preclude her from having an "active clinical practice" under Virginia Code § 8.01-581.20, and therefore, she may be able to qualify as an expert witness in this malpractice action.

This is a case of first impression in the Commonwealth. Virginia Code § 8.01-581.20 establishes standards for the qualification of an expert witness in a medical malpractice case. This statute states that:

A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the

defendant's specialty and *if he has had active clinical practice* in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Virginia Code § 8.01-581.20. (Emphasis added.)

The statute does not define "active clinical practice," and only a few Virginia cases have discussed the meaning of this phrase.

In *Peck v. Tegtmeyer*, 834 F. Supp. 903 (W.D. Va. 1992), *aff'd* 4 F.3d 985 (4th Cir. 1993), the federal court acknowledged that the phrase "clinical practice" had not been defined by Virginia statute or case law. The court explained that the essential element of a "clinical practice" was the treatment of patients. Citing the *Attorneys' Dictionary of Medicine*, the court defined "clinical medicine" as "the study of disease and evaluation of the medical situation at the bedside of a patient." *Peck*, at 911. Applying this definition, the court reasoned that a radiation physicist who did not see patients failed to have the clinical experience required by the Virginia Code.

Similarly, *Fairfax Hosp. Sys. v. Curtis*, 249 Va. 531, 537, 457 S.E.2d 66, 70 (1995), held that a physician's employment as director of a helicopter service which transported sick and injured patients did not amount to an active clinical practice. Although the doctor had been an active attending physician until about two years before the alleged malpractice occurred, he was not actively practicing at the time of the alleged malpractice. Thus, the court determined that the doctor was not qualified to testify as an expert. *Fairfax*, at 537.

Finally, the Supreme Court of Virginia held in *Lawson v. Elkins*, 252 Va. 352, 477 S.E.2d 510 (1996), that a trial court did not abuse its discretion in refusing to allow a neurosurgeon to testify as an expert witness on a defendant's specialty of orthopaedic surgery. The court explained that orthopaedic surgery involves the procedure of chemonucleolysis, which the proffered expert had never performed upon a patient and of which he had very little knowledge. In arriving at this conclusion, the reviewing court noted that the trial court had not ruled generally that a neurosurgeon may not render an expert opinion on an orthopaedic surgeon's standard of care but that its ruling was limited to holding that this particular doctor was not qualified to attest to the standard of care. *Lawson*, at 355.

In the instant case, Dr. Loiacono was licensed to practice medicine during the year following the alleged malpractice. Therefore, she was a "physician" under Virginia Code § 8.01-581.1 during this time. As a resi-

dent, Dr. Loiacono was limited to practicing within a particular institution and was accountable to a fully licensed member of the staff. As Defendants admitted at the hearing held on February 4, 1998, a surgical resident can provide some patient care without an attending surgeon present. In her last year of residency, and within the applicable time frame, Dr. Loiacono was made chief surgical resident. As Defendant Minichan testified at the hearing held on February 4, 1998, a chief surgical resident can determine the diagnosis of a patient, formulate a plan of care, and perform a surgical procedure after consulting with the attending surgeon, which may sometimes be done by telephone. Also within the applicable time frame, Dr. Loiacono began teaching in the surgical program at the College of Medicine while also serving as an attending surgeon at the College and at the Veteran's Hospital.

Plaintiff asserts that a person need not be free from all supervision to have an "active clinical practice," and this Court agrees. Dr. Loiacono was a surgical resident within one year of the date of the alleged malpractice, and her testimony would address the appropriate standard of care of a general surgeon. As a surgical resident, she actively worked with patients and pursued "the study of disease and evaluation of the medical situation at the bedside of a patient," which *Peck v. Tegtmeyer*, 834 F. Supp. 903, 911 (W.D. Va. 1992), *aff'd*, 4 F.3d 985 (4th Cir. 1993), described as the heart of clinical practice. Defendants make no allegation that the general surgical procedure at issue in this case is outside the knowledge or practice that Dr. Loiacono had as a surgical resident. Thus, there is no apparent reason to exclude her testimony as the trial court elected to do in *Lawson v. Elkins*, 252 Va. 352, 477 S.E.2d 510 (1996), discussed above. Under these particular circumstances, the Court can find no Virginia statutory or case law that gives reason to withhold qualification of Dr. Loiacono as an expert on the objections made so far. She actively treated patients in a clinical setting and so had an "active clinical practice."

Finally, counsels' briefs also address the issue of whether an individual who was a resident at the time of the alleged wrongdoing may critique the care provided by a more senior physician. This question is relevant to the weight of the expert evidence and not to its admissibility. Therefore, this point remains for the jury to conclude.

The Defendants' Motion to Dismiss is denied, and the Plaintiff will be allowed to present whatever evidence he may be so inclined to have Dr. Loiacono declared an expert witness before the jury.